UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**KEVIN KWART,**

Case No.

Plaintiff,

v.                                                                    Hon.

**CITY OF DETROIT,** a municipal corporation,
**OFFICER STEPHEN ANOUTI,** in his individual and
official capacities, **SGT. TIMOTHY VERNON,** in his
individual and official capacities, **JOHN DOE OFFICER 1,**
in his individual and official capacities, **JOHN DOE OFFICER 2,**
in his individual and official capacities, and **JOHN DOE OFFICER 3,**
in his individual and official capacities,

Defendants.

_____/

Jack W. Schulz (P78078)
SCHULZ LAW PLC
PO Box 44855
Detroit, MI 48244
(313) 246-3590
jackwschulz@gmail.com
*Attorney for Plaintiff*

_____/

## <u>COMPLAINT AND DEMAND FOR TRIAL BY JURY</u>

There is no other civil action pending in
this Honorable Court or any other Court
arising out of the same transaction and
occurrence.

**NOW COMES** Plaintiff, **KEVIN KWART**, for his Complaint against

Defendants, stating the following:

## **INTRODUCTION**

1.      On the night of August 22, 2020, Plaintiff Kevin Kwart witnessed a protest occurring near his girlfriend's Woodward apartment where he was staying. Kevin did not participate in the protest, but upon witnessing police officers in riot gear assemble to storm the protestors, he offered the apartment's vestibule as a place for those who wished to disburse but could not do so safely to seek shelter. Once the police began deploying tear gas, pepper spray, and batons on the protestors, several individuals entered the lobby of the building seeking safety and shelter. At all times, Kevin remained a few feet from the front door, never left the sidewalk, and maintained his distance from the conflict. At one point, Kevin even politely handed an offer a piece of equipment dropped by another officer. Despite this, Kevin was eventually rushed, dogpiled, and brutally beaten by four Detroit police officers without provocation. While Kevin was fully subdued, the officers took turns punching him in the face, grinding his head into the pavement, kicking him, and stomping him until he required medical treatment.

Despite never leaving the sidewalk, Kevin was charged with "blocking a moving lane of traffic." As a pretext for the unprovoked drubbing Kevin was subjected to, he was also charged with disobeying a lawful order and disorderly conduct. The proposed tickets were so farfetched that officers argued over who would have put their signature on them—ultimately cutting him loose without any officer signing as the issuing officer.

Nonetheless, the frivolous tickets were prosecuted by the City until they were rightfully dismissed with the assistance of legal counsel.

With this Complaint, Plaintiff seeks relief for violations, under color of state law, of his rights, privileges and immunities secured by the Fourth Amendment to the United States Constitution, pursuant to 42 U.S.C. §1983, and tort claims of Assault, Battery, and Malicious Prosecution.

## JURISDICITON AND VENUE

2.      This Court has subject matter jurisdiction over the Plaintiff's claims pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343 (civil rights jurisdiction).

3.      The amount in controversy exceeds $75,000.00, exclusive of interest, costs and attorney fees.

4.      Under 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's state law claims.

5.      This Court is the proper venue pursuant to 28 U.S.C. § 1391(b) as a significant amount of the acts and omissions giving rise to this complaint occurred in Wayne County.

## PARTIES

6.      Plaintiff Kevin Kwart is an individual who resides in Oakland County, Michigan.

7.     Defendant City of Detroit is a municipal corporation duly organized and existing under the Constitution and laws of the State of Michigan. It is, and has been at all times relevant hereto, authorized by law to maintain and operate the Detroit Police Department ("DPD"). By and through its agents, including but not limited to the Mayor, the Chief of Police, its supervisors, operating officers, Boards, Commissions, and Committees and its final policymakers, Defendant City, at all times relevant hereto, acting through its official policy makers, established, promulgated and implemented the policies, customs and practices, written and unwritten, of the DPD, with regard to hiring, training, supervision, discipline of the employees of said department.

8.     Defendant Officer Stephen Anouti at all relevant times herein, was a law enforcement officer employed by Defendant City of Detroit and/or DPD. Defendant Officer, at all relevant times herein, was acting in their individual and official capacities under color of state law.

9.     Defendant Sgt. Timothy Vernon at all relevant times herein, was a law enforcement officer employed by Defendant City of Detroit and/or DPD. Defendant Officer, at all relevant times herein, was acting in their individual and official capacities under color of state law.

10.     Defendant John Doe Officer 1 at all relevant times herein, was a law enforcement officer employed by Defendant City of Detroit and/or DPD. Defendant Officer, at all relevant times herein, was acting in their individual and official capacities

under color of state law. Defendant John Doe Officer 1 cannot be identified at this time but will be identified throughout the course of discovery.

11.     Defendant John Doe Officer 2 at all relevant times herein, was a law enforcement officer employed by Defendant City of Detroit and/or DPD. Defendant Officer, at all relevant times herein, was acting in their individual and official capacities under color of state law. Defendant John Doe Officer 2 cannot be identified at this time but will be identified throughout the course of discovery.

12.     Defendant John Doe Officer 3 at all relevant times herein, was a law enforcement officer employed by Defendant City of Detroit and/or DPD. Defendant Officer, at all relevant times herein, was acting in their individual and official capacities under color of state law. Defendant John Doe Officer 3 cannot be identified at this time but will be identified throughout the course of discovery.

## **GENERAL ALLEGATIONS**

13.     On August 22, 2020, Plaintiff Kevin Kwart ("Plaintiff" or "Kwart") began his day riding his bicycle and eating dinner with his girlfriend, Amy Novak ("Novak"), around Detroit.

14.     Following dinner, Plaintiff and Novak returned to Novak's apartment in *The Ferguson*, which is located at 1448 Woodward Ave. in Detroit (near John R.).

15.     Upon returning for dinner, Plaintiff noticed protestors congregating close to Novak's apartment.

16.     Up until this point, Plaintiff was completely unaware that a protest was to occur around Woodward and John R nor did he have any intention in participating in it.

17.     Shortly after returning, Plaintiff took the dog for a brief walk to allow it to go to the bathroom. Plaintiff took the dog to Grand Circus Park where he observed a significant amount of Detroit police officers assembling to confront the protestors.

18.     Plaintiff hurried back to Novak's apartment to return the dog and inform Novak that he was going to notify protestors that the police were assembling down the street and appeared ready to attack.

19.     Plaintiff went outside and notified several protestors that the DPD was preparing to advance on them and that if anyone needed a place to leave for safety, they were welcome to stand in the doorway of the apartment building.

20.     Plaintiff brought a flag on a long flimsy wire thin from his bicycle so that he could signal protestors. Plaintiff informed those he spoke with to look for him waving the flag and he would let them enter the lobby as an option for safety purposes until its safe enough to leave the area.

21.     Plaintiff returned to doorway of *The Ferguson* waving the flag.  From this moment forward, Plaintiff never left the sidewalk.

22.     As predicted, DPD stormed the protestors firing tear gas into the air and hitting them with batons. Plaintiff maintained his distance and continued to wave the bicycle flag to signal an option to disperse safely.

23.     Several individuals who were scared of the situation and unable to exit the area approached Plaintiff and were let into the building for safety.

24.     During this period, Plaintiff cordially interacted with several DPD officers and even handed an officer an item that was dropped by another officer.

25.     Eventually, Plaintiff noticed DOE OFFICERS 1 and 2 pepper spraying and forcefully arresting a subdued African American protestor in the street directly in front of him. Plaintiff cautiously approached the officers and protestor *(pictured below)*. Plaintiff told the protestor to remain still while they arrested him and pleaded with the DOE OFFICERS 1 and 2 to "please relax" and "go easy" on the individual because he already appeared pepper sprayed, subdued, and injured. During the interaction, maintained a safe distance and never left the sidewalk.



26.     In response, DOE OFFICER 1 (*pictured above with a riot shield*) turned towards Plaintiff and, unprovoked, forcefully shoved Plaintiff backwards with his shield.

27.     Plaintiff began backing up towards *the Ferguson* and the officers, now joined by Defendant Officer Stephen Anouti ("Defendant Anouti") and DOE OFFICER 3 charged tackling him to the ground. *(see picture below)*



28.     Plaintiff was immediately smothered by Defendant Anouti and JOHN DOE OFFICERS 1-3. Defendant Anouti forcefully held Plaintiff's head to the ground grinding it into the pavement and punching him several times.  DOE OFFICER 1 began to pummel Plaintiff with several haymaker punches directly to the face. *(See picture on next page)*



29.     Defendant Anouti and DOE OFFICERS 1-3 continued to use unnecessary and shocking excessive force while placing Plaintiff in zip ties.

30.     For approximately two full minutes, the Defendant Officers continuously pummeled Plaintiff with punches, occasionally kicking him and stomping on him. Importantly, Plaintiff was fully restrained throughout the entire period of which he was subjected to the shocking level brutality.

31.     Once placed in zip ties, Plaintiff felt concussed as he could not see straight and was experiencing extreme light sensitivity. Further, Plaintiff was experiencing severe shoulder pain.

32.     Plaintiff pleaded for medical attention. After approximately 10-15 minutes, Plaintiff was moved into a line of arrestees near *San Morello* restaurant. At

this point, an on site medic, in coordination with the police, walked up to Plaintiff and simply stated "he's fine" without any examination.

33.     DPD began to load Plaintiff into a vehicle with other arrestees.  Plaintiff begged to be taken to the hospital.  Ultimately, an unknown officer agrees and loads Plaintiff onto an ambulance.

34.     Plaintiff is taken to Detroit Receiving Hospital ("DRH") where he diagnosed with a separated shoulder, an acute closed head injury, and multiple abrasions to the face.

35.     After being discharged from DRH, DPD officers arrived to take Plaintiff to the Detroit Detention Center on Mound Rd. ("DDC") with the other arrestees.

36.     At the DDC, in the presence of Plaintiff and others, several officers refused to sign their name to Plaintiff's tickets and argued with each other who ultimately would. Plaintiff overheard one officer state "I'm not writing my name on that guy's ticket" because of how injured Plaintiff was.

37.     As a result, Plaintiff was provided unsigned tickets charging him with disorderly conduct, disobeying the lawful order of a police officer, and blocking a moving lane of traffic. *(Exhibit A)*

38.     Plaintiff posted bail and left the DDC.

39.     The following afternoon, Plaintiff attended a tribunal on the events and his facial injuries were photographed. *(See picture below)* At the tribunal, Plaintiff was also interviewed by various local new outlets discussing his experience and injuries.[1]



40.     Plaintiff continued to have concussion like symptoms for days and was experienced jarring light sensitivity.

41.     Ultimately, Defendant Sgt. Timothy Vernon signed Plaintiff's tickets as the witnessing/complaining officer despite, on information and belief, not actually witnessing the alleged violations by Plaintiff or participating in Plaintiff's arrest.

---

[1] *See* https://www.detroitnews.com/videos/news/local/detroit-city/2020/08/23/kevin-kwart-talks-beating-and-injuries-he-received-saturday-night/3427049001/
https://www.freep.com/story/news/local/michigan/detroit/2020/08/24/detroit-protesters-detroit-police-turf-war-black-lives-matter-arrests/3427699001/

42.     Plaintiff was prosecuted for disorderly conduct, disobeying the lawful order of a police officer, and blocking a moving lane of traffic, despite a complete lack of probable cause, supporting evidence, or even correctly naming a witnessing officer.

43.     Several months after the incident, with the assistance of legal counsel, all charges against Plaintiff were dismissed.

## COUNT I
## VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983
## (FOURTH AMENDEMENT – EXCESSIVE FORCE)
### *(All Defendants)*

44.     All preceding paragraphs are incorporated by reference.

45.     At all relevant times, Defendants have acted—and continue to act—under color of state law.

46.     Defendants' above-described conduct violated Plaintiff's clearly established rights pursuant to the Fourth Amendment of the United States Constitution to be free from unreasonable, excessive and arbitrary force, and seizures under color of law.

47.     The arbitrary and indiscriminate use of force against Plaintiff, described in detail above, was excessive and objectively unreasonable, in direct violation of Plaintiff's rights under the Fourth Amendment.

48.     Defendants neither accused Plaintiff of a crime nor did they attempt to arrest him before brutally beating him.

49.     Defendants continued to physically assault Plaintiff once he had been fully restrained and subdued by the officers.

50.     Plaintiff did not pose any reasonable immediate threat to the safety of any officer nor have Defendants provided sufficient evidence asserting so.

51.     Defendants' attack served no purpose but to injure and punish Plaintiff.

52.     As a direct and proximate result of Defendants' unlawful actions, Plaintiff has sustained injuries and damages including, physical injury, mental anguish and emotional distress, humiliation and embarrassment, and have incurred attorney fees.

**COUNT II**
**VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983**
**(FOURTH AMENDEMENT – ARREST WITHOUT PROBABLE CAUSE)**
*(All Defendants)*

53.     All preceding paragraphs are incorporated by reference.

54.     At all relevant times, Defendants have acted—and continue to act—under color of state law.

55.     Defendants detained, seized, handcuffed, arrested, and searched Plaintiff's person despite the lack of any individualized probable cause or reasonable suspicion that Plaintiff committed any crime.

56.     Following Plaintiff's arrest, no officer at the station was willing to sign their own name to Plaintiff's tickets accusing him of absurd and unsubstantiated crimes therefore Plaintiff was discharged with unsigned tickets.

57.     On information and belief, the tickets against Plaintiff were later signed off by Defendant Vernon who did not actually witness or assert any facts describing Plaintiffs' alleged violations of law.

58.     All charges against the Plaintiff have been dismissed.

59.     As a direct and proximate result of Defendants' unlawful actions, Plaintiff has sustained injuries and damages including physical injury, mental anguish and emotional distress, humiliation and embarrassment, and have incurred attorney fees.

### COUNT III
### MUNICIPAL LIABILITY UNDER 42 U.S.C. § 1983
#### (Monell Liability Against Defendant City of Detroit)

60.     Plaintiffs incorporate herein all prior allegations.

61.     A municipality is liable under 42 U.S.C. § 1983 if the alleged violations are attributable to its own policies, practices, and customs.

62.     At all times relevant to this Complaint, Defendant City of Detroit acted with deliberate indifference to Plaintiff's Constitutional rights by maintaining policies, practices, and customs that condoned and fostered the Defendant Officers' conduct. Specifically, the City of Detroit maintained a policy that permitted the Defendant Officers to use unreasonable and excessive force on unarmed, nonthreatening individuals.

63.     In the alternative and at all times relevant to this complaint, the City of Detroit did not in fact have such a policy in place but failed to properly train and

supervise the Defendant Officers, thereby demonstrating deliberate indifference to Plaintiffs' rights.

64.     At all times relevant in this complaint, direct and proximate cause of the damages and injuries complained of were caused by policies, practices and /or customs developed, implemented, enforced, encouraged, and sanctioned by Defendant City of Detroit, including the failure:

> a. To adequately supervise and train its officers and agents, including the individual Defendants, thereby failing to adequately discourage further Constitutional violations on the part of its officers;
>
> b. To adequately supervise and train its officers and agents, including the individual Defendants, on the proper standard for the proper standard for using force against a criminal suspect;
>
> c. To adequately supervise and train its officers and agents, including the individual Defendants, on the proper standard for issuing tickets and probable cause;
>
> d. To monitor and discipline its officers, including individual Defendants; and properly and adequately;
>
> e. To properly and adequately investigate citizen complaints of police misconduct and instead, acts of misconduct were tolerated by Defendant City of Detroit; and
>
> f. To adequately supervise and train its officers and agents, including the individual Defendants, to only issue and sign off on tickets involving alleged crimes witnessed by the signing officer for which there is probable cause.

65.     Defendant City of Detroit's supervision of the Defendant officers was deficient as it to relates to excessive force and unlawful arrest. Defendant City of Detroit,

with clear deliberate indifference to Plaintiff, has a demonstrable pattern and unwritten policy in place to ignore and thereby encourage unlawful and unconstitutional actions of its officers, including:

a. Threatening to seize peoples' cameras and/or phones 'as evidence' when those people are lawfully engaged in recording police activity;

b. Failing to properly wear and/or turning off body cameras when they are engaged in or unlawful and unconstitutional activity;

c. Failing to complete use of force reports or otherwise individually identify officers who asserted force against an individual;

d. Intentionally covering all identifiable information including, but not limited to, name, badge, tattoos, and face; and

e. Obstructively refusing to identify officers accused of serious constitutional violations.

66.      Defendant City of Detroit directly caused the constitutional violations suffered by Plaintiff and is liable for the damages caused as a result of the conduct of the individual Defendants. The conduct of the individual Defendant officers was a direct consequence of the policies and practices of Defendant City of Detroit.

67.      Upon information and belief, the individual Defendant Officers were not subjected to any disciplinary action despite their unlawful actions.

68.      Defendant City of Detroit has acted with deliberate indifference to the constitutional rights of the Plaintiff. As a direct and proximate result of the acts as stated herein by each of the Defendants, the Plaintiff's constitutional rights have been violated.

16

69.     As a proximate result of the unconstitutional acts of Defendant City of Detroit, Plaintiff was harmed and suffer damages for his physical, mental, and emotional injury and pain, mental anguish, humiliation, and embarrassment.

## COUNT IV
## ASSAULT AND BATTERY
## (IN VIOLATION OF STATE LAW)
### *(Defendant Anouti and Doe Officer 1-3)*

70.     All preceding paragraphs are incorporated by reference.

71.     The aforementioned actions and conduct of Defendant Anouti and DOE OFFICERS 1-3 as incorporated herein, were willful, wanton, intention and/or reckless.

72.     The he aforementioned actions and conduct of Defendant Anouti and DOE OFFICERS 1-3 as incorporated herein, created a reasonable apprehension of an immediate threat of harm and/or offensive touching to Plaintiff.

73.     The aforementioned actions and conduct by Defendant Anouti and DOE OFFICERS 1-3 as incorporated herein, did in fact constitute an offensive and harmful touching of Plaintiff.

74.     Defendant Anouti and DOE OFFICER 1-3 punched Plaintiff directly in the face and head several times, kicked him, and stomped on his legs and body while Plaintiff was already restrained for nearly two full minutes.

75.     Defendants knew or should have known that his aforementioned actions and/or conduct would cause injury to Plaintiff.

76.     As a proximate result of the unconstitutional acts of Defendant City of Detroit, Plaintiff was harmed and suffer damages for his physical, mental, and emotional injury and pain, mental anguish, humiliation, and embarrassment.

## COUNT V
## MALICIOUS PROSECUTION
### (All Defendants)

77.     All preceding paragraphs are incorporated by reference.

78.     Defendant City of Detroit and Defendant Vernon issued tickets and prosecuted Plaintiff for crimes for which they knew or reasonably should have known Plaintiff to be innocent of or otherwise for which they did not have the evidence to support pursuing prosecution.

79.     Following Plaintiff's arrest, no officer present was willing to sign their own name to Plaintiff's tickets as the charges were unsubstantiated and Plaintiff had suffered obvious injuries through excessive force by the Detroit police, therefore Plaintiff was discharged with unsigned tickets.

80.     Ultimately, the tickets against Plaintiff were signed off by Defendant Vernon who did not actually witness or assert any facts describing Plaintiffs' alleged violations of law.

81.     Defendants continued unjustified prosecution of Plaintiff was done with malice and/or was intended to punish him for legal acts.

82.     As a proximate result of the unconstitutional acts of Defendant City of Detroit, Plaintiff was harmed and suffer damages for his physical, mental, and emotional injury and pain, mental anguish, humiliation, and embarrassment.

## **REQUEST FOR RELIEF**

**WHEREFORE**, Plaintiff requests that this Honorable Court:

a.     Declare that the aforementioned practices and actions of Defendant constitute unlawful practices in violation of Plaintiff's constitutional and statutory rights;

b.     Award Plaintiff full and fair compensatory damages to be determined by a jury;

c.     Award Plaintiff full and fair emotional and punitive damages to be determined by a jury;

d.     Award Plaintiff reasonable attorney fees, costs and interest; and

e.     Award such other relief as this Court deems just and proper.

Respectfully submitted,

By:  /s/ Jack W. Schulz
Jack W. Schulz (P78078)
SCHULZ LAW PLC
PO Box 44855
Detroit, MI 48244
(313) 246-3590
jackwschulz@gmail.com
*Attorney for Plaintiff*

DATE: April 13, 2021

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**KEVIN KWART,**

                                             Case No.

              Plaintiff,

v.                                     Hon.

**CITY OF DETROIT,** a municipal corporation,
**OFFICER STEPHEN ANOUTI,** in his individual and
official capacities, **SGT. TIMOTHY VERNON**, in his
individual and official capacities, **JOHN DOE OFFICER 1,**
in his individual and official capacities, **JOHN DOE OFFICER 2,**
in his individual and official capacities**, and JOHN DOE OFFICER 3,**
in his individual and official capacities**,**

             Defendants.

_____/

Jack W. Schulz (P78078)
SCHULZ LAW PLC
PO Box 44855
Detroit, MI 48244
(313) 246-3590
jackwschulz@gmail.com
*Attorney for Plaintiff*

_____/

## <u>DEMAND FOR TRIAL BY JURY</u>

    Plaintiff Kevin Kwart hereby demands for a trial by jury.

                               Respectfully submitted,

                               By:  /s/ Jack W. Schulz_____
                               Jack W. Schulz (P78078)
                               SCHULZ LAW PLC
                               PO Box 44855
                               Detroit, MI 48244
                               (313) 246-3590

jackwschulz@gmail.com
*Attorney for Plaintiff*

DATE: April 13, 2021